1

2

3

4

THE HONORABLE JAMAL N. WHITEHEAD

5          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
6                   AT SEATTLE

7  UNITED STATES OF AMERICA,              ) No. CR25-131-JNW
                                          )
8              Plaintiff,                  )
                                          )
9        v.                                ) VICTOR VIVANCO-REYES'S
                                          ) RESPONSE TO GOVERNMENT'S
10  VICTOR VIVANCO-REYES,                  ) MOTIONS IN LIMINE
                                          )
11             Defendant.                  )
                                          )
12  _____)

13         Victor Vivanco-Reyes is accused of assaulting four federal officers with a

14  dangerous weapon, making physical contact, and in two instances, causing bodily

15  injury, in violation of 18 U.S.C. § 111(a) and (b). Dkt. 12. The government has filed

16  three motions in limine which Mr. Vivanco-Reyes opposes: (1) not to inform the jury

17  ignorant about the potential penalties Mr. Vivanco-Reyes faces if he is convicted and if

18  they find certain facts; (2) to admit testimony about an alleged encounter with

19  immigration officers on May 22, 2025; and (3) to preclude the testimony of Dr. Yurivia

20  Cervantes-Manzo. The Court should deny each of these motions.

21  **I.    ARGUMENT**

22      **A.    The Jury Should Be Informed of the Consequences of Finding
               Certain Facts**

23
           The government argues that Mr. Vivanco-Reyes should not be permitted to
24
    present argument or evidence about the potential punishment he faces. Courts before
25
    and the government now rely on statements from *Shannon v. United States*, 512 U.S.
26

573 (1994), about the division of labor between judge and jury. *See* Daniel Epps & William Ortman, *The Informed Jury*, 75 Vand. L. Rev. 823, 830–35 (2022) (describing how courts have interpreted *Shannon* and the views of some dissenters). But what is old is new again. *See, e.g.*, *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020) (reconsidering and overruling previous holdings that non-unanimous jury verdicts are constitutional). Since *Shannon*, the Supreme Court has revitalized the role of the jury and its function to find all facts that increase the statutory maximum and minimum penalties. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000) (re-examining the history and tradition of the jury function and holding that juries must find any fact that increases the statutory maximum penalty); *Alleyne v. United States*, 570 U.S. 99 (2013) (overruling precedent to hold that juries must find every fact that increases the statutory minimum punishment). And review of the history and tradition of the criminal jury suggests that juries should be informed rather than ignorant. *See generally* Epps & Ortman, *supra*, at 840–55.

Mr. Vivanco-Reyes acknowledges this Court cannot overrule and ignore precedent alone. He objects for now to preserve the issue.

### B.    The May 22, 2025, Incident Should Not Be Admitted

The government would like to admit testimony about events on May 22, 2025, that are uncharged and disputed, which would lead to a minitrial. It claims the evidence is "inextricably intertwined" with the collision on June 6, 2025, and admissible under Federal Rule of Evidence 404(b). Neither theory justifies introducing this evidence which threatens to distract the jury from the real issues: whether Mr. Vivanco-Reyes intentionally drove into the officers and used the truck and trailer as a dangerous weapon instead of a means to get away.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

1

2

### 1.    The May 22nd Incident Is Unnecessary to Tell a Coherent and Comprehensible Story.

"Other act" evidence does not need to meet Rule 404(b) if it is "necessary … to offer a coherent and comprehensible story regarding the commission of the crime." *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).

The government has not met this standard. It claims that the May 22nd incident "*supports* Vivanco-Reyes's 'forcible assault'" as alleged on June 5th because it is "*relevant* to his subsequent intentions" and "*further explain*[*s*] his escalated and violent response," and that without it, "the jury *could be concerned* by the show of force" by officers. Dkt. 20 at 6–7 (emphasis added). But these assertions, even if true, do not establish that the May 22nd incident is necessary to tell a "coherent and comprehensible" story about the collision on June 5th. *Vizcarra*, 66 F.3d at 1013. The government can tell a coherent story without every piece of assertedly relevant evidence that is weeks removed.

The proffered evidence is less essential to a coherent narrative than in other cases where courts have permitted uncharged evidence about contemporaneous interactions with law enforcement officers. In *United States v. Ruiz*, No. 22-50175, 2023 WL 6999439, at *1 (9th Cir. Oct. 24, 2023), the district court did not plainly err by admitting evidence at a trial for assaulting a federal officer that the defendant "began making threats seconds after striking an officer." This directly and contemporaneously "helped show that Ruiz intended to strike the officer." *Id*. By contrast, Mr. Vivanco-Reyes's alleged act on May 22nd was flight, not threats, and two weeks removed from the charges.

Similarly, in *United States v. Luyster*, 821 F. App'x 819, 820 (9th Cir. 2020), the district court did not commit reversible error in admitting evidence that the defendant, who was charged with unlawful possession of a gun, "pistol-whipped the mother of his child," which "immediately preceded Luyster's possession of firearms and ammunition

VICTOR VIVANCO-REYES'S RESPONSE TO GOVERNMENT'S MOTIONS IN LIMINE (*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

as a temporal matter." The pistol-whipping caused a 911 call and "armed standoff between Luyster and the officers who responded to the 911 call." *Id*. Again, by contrast, the May 22nd incident is two weeks removed from the charges. *See also United States v. Miller*, No. 21-50204, 2023 WL 2064542, at *1 (9th Cir. Feb. 17, 2023) (no error in admitting "acts at issue [that] occurred either contemporaneously with or shortly after the drug deal"); *United States v. Peterson*, 781 F. App'x 611, 613 (9th Cir. 2019) (no abuse of discretion in admitting "the fact that [defendant] was taken into state custody on unrelated charges before officers found the firearm that gave rise to the present charges").

The government also claims information about the attempted arrest on May 22nd will address any concerns jurors may have about how the agents tried to stop Mr. Vivanco-Reyes on June 6th. The logic of this claim is difficult to follow. The government has not explained why aerial surveillance would address the safety concerns of someone driving away. Video from the aerial surveillance shows that Mr. Vivanco-Reyes and his colleague were under nearly constant observation for over 20 minutes while they did their jobs. The May 22nd incident also does not explain why the agents did not attempt to approach Mr. Vivanco-Reyes before he started driving.[1] Nor does the May 22nd incident explain why the agents covered their faces with gaiters or balaclavas.

**2.    The May 22nd Incident Is Not Admissible Under Fed. R. Evid. 404(b).**

Mr. Vivanco-Reyes has already moved in limine to preclude evidence about the May 22nd incident, Dkt. 24, and will not repeat those arguments here. One point

---

[1] It is unclear how the agents were certain that Mr. Vivanco-Reyes was, in fact, working at the job site under surveillance. Three days before the incident, the agents asked his employer where they might be able to talk to him, and the employer gave them two possible locations. They did not go to the job sites that day and waited three additional days.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

warrants a response not previously addressed: the similarity of the incidents. As noted previously, the May 22nd incident may show reckless driving, but it does not show any intentional effort to hurt others to get away. The government speculates that the only reason that is the case is because the agents did not block his path, but no facts support that claim. The driver of the car did not drive into oncoming traffic or parked cars.

> **3.      Testimony About the May 22nd Encounter Is More Prejudicial Than Probative and Should Be Limited If Admitted.**

Mr. Vivanco-Reyes has explained why this evidence should be excluded under Federal Rule of Evidence 403 and will not repeat those arguments here. Dkt. 24.

If the Court is inclined to admit this evidence, the testimony should be limited to exclude descriptions about near accidents. The agents claimed the driver would have hit a pedestrian waiting to cross the street had she tried to run across the street. They claim that as he drove through a parking lot to avoid traffic, his car briefly flew through the air. They said he tried to pass a school bus at a high rate of speed and drove on the right shoulder of Highway 532. None of these claims are essential to prove a material point and are highly prejudicial.

If the fact of an attempted traffic stop on May 22nd is necessary to show that June 6th was not "the first time law enforcement had encountered the defendant," the alleged "*circumstances* of the prior flight" are still unnecessary. Dkt. 20 at 6–7 (emphasis added). And evidence of reckless driving and attempts to avoid hitting others does not show that the driver was so desperate that he would intentionally drive his car into officers. So, if the Court permits agents to testify about the attempted traffic stop to show that the driver was "on notice that he was being sought by law enforcement," *id.* at 6, there is no reason to introduce into evidence facts about his alleged reckless driving on that day. Testimony should be limited to establishing his identity as the driver, that the agents tried to stop him, and that the stop was unsuccessful.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

C.    **Dr. Cervantes-Manzo's Testimony Is Admissible and Essential for Mr. Vivanco-Reyes's Defense**

Mr. Vivanco-Reyes intends to call as an expert Dr. Yurivia Cervantes-Manzo to discuss how post-traumatic stress disorder and adverse childhood experiences affect cognitive functioning and decision making—particularly while under stress. Dr. Cervantes-Manzo will explain how PTSD and adverse childhood experiences change the brain. Those with PTSD, like Mr. Vivanco-Reyes, show increased responsiveness to traumatic and emotional stimuli, decreased emotional regulation, and reduced executive functioning. The impact of PTSD on the brain often causes those who suffer from it to show inefficient problem solving and decision making, particularly due to the overactivation of the fight or flight response. When that survival instinct is activated, those with PTSD have difficulty accessing those executive functions. Moreover, those who were exposed to repeated trauma as children show delayed neurodevelopment and greater difficulty rationalizing and capitalizing on any cognitive resources they may have.

The government moves to exclude Dr. Cervantes-Manzo's testimony for three reasons: (1) a supposed categorical rule precluding testimony about PTSD for general-intent crimes; (2) that Dr. Cervantes-Manzo's opinions are "speculative"; and (3) expert testimony would "mislead or confuse the jury." Dkt. 20 at 12–14. None of these arguments has merit. It has not requested a *Daubert* hearing to probe the reliability or methods Dr. Cervantes-Manzo uses or to contest her credentials.

Expert testimony is permissible "if the proponent demonstrates to the court that it is more likely than not that: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

702. "Evidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added).

Excluding expert testimony will interfere with Mr. Vivanco-Reyes's right to present a defense, as guaranteed by the Sixth Amendment. *In re Winship*, 397 U.S. 357, 363–64 (1970). The right to present a defense "generally includes the right to the admission of competent, reliable, exculpatory evidence to negate an element of the offense." *United States v. Odeh*, 815 F.3d 968, 977 (6th Cir. 2016) (quotations omitted). Restrictions on a defendant's right to present a defense "may not be arbitrary or disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Here, preventing Mr. Vivanco-Reyes from introducing evidence of his PTSD diagnosis and the impact of that disorder on cognitive functioning would violate the Sixth Amendment and is not required by Federal Rules of Evidence 702 and 403.

### 1. Dr. Cervantes-Manzo's Testimony Is Material to Determine Whether Mr. Vivanco-Reyes Knowingly, Intentionally, and Forcibly Assaulted Federal Officers.

Dr. Cervantes-Manzo's testimony is critical for Mr. Vivanco-Reyes's defense. As previously briefed, he has been diagnosed with PTSD due to numerous severe traumatic experiences he suffered as a child, which are strikingly similar to the circumstances of June 6th. Dkt. 23 at 1–4.

Dr. Cervantes-Manzo's testimony is relevant to determine whether Mr. Vivanco-Reyes's actions were intentional or forceful. Although forcible assault is a general-intent crime, he cannot be precluded from offering evidence that negates an element of the offense—that he acted intentionally, knowingly, and forcibly. *Odeh*, 815 F.3d at 977. There is an important difference between an affirmative defense, which "excuses" the defendant's misconduct, and evidence offered to negate the mens rea. *United States*

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

1   *v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987). Properly understood, the diminished-

2   capacity defense is an affirmative defense that excuses criminal conduct if the mental

3   disease or defect meant the defendant lacked the capacity to form the mens rea. *Id.* at

4   903. Mr. Vivanco-Reyes will not be offering evidence of his PTSD to excuse his

5   conduct; rather, the evidence negates elements of the offense charged.

6       As previously briefed, the mens rea—and the difference between willfulness and

7   recklessness—is the core of this case. Dkt. 24 at 4–5.

8       The government relies on *United States v. Kimes*, 246 F.3d 800, 803, 809 (6th

9   Cir. 2001), to claim testimony about PTSD is inadmissible here. Dkt. 20 at 12. But

10  *Kimes* cannot be read in isolation without understanding the Sixth Circuit's subsequent

11  interpretation. In *Odeh*, the Sixth Circuit addressed whether testimony about PTSD is

12  categorically inadmissible for general-intent crimes. 815 F.3d at 976. The answer was a

13  resounding "no": regardless of whether a crime charged is a specific- or general-intent

14  crime, evidence about PTSD is admissible if it is relevant to decide whether someone

15  acted knowingly or intentionally. *See id.* at 976–77. In that case, the court found expert

16  testimony about a PTSD diagnosis to be relevant to the general intent crime of false

17  naturalization. *Id*. Specifically, PTSD may have caused the defendant to forget an

18  event, such that she did not knowingly omit information about it in her naturalization

19  application. *Id*. Here, PTSD may have caused Mr. Vivanco-Reyes to flashback to his

20  traumatic memories and forget his current circumstances, to fail to think through the

21  potential consequences of his panicked flight, and to be unable to marshal the cognitive

22  resources to effectively drive. These would suggest he did not intentionally drive into

23  the federal officers' cars.

24      When addressing *Kimes*, the *Odeh* court explained "that evidence of diminished

25  capacity is inadmissible in general intent prosecutions where the diminished capacity

26  relates to what would be a specific intent element." *Id.* at 978 (quotation marks

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*), No. CR25-131-JNW) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

omitted). In *Kimes*, evidence of the defendant's PTSD was offered to show "that when a federal officer touched his shoulder, he could not help but overreact." *Id.* at 978 (describing *Kimes*, 246 F.3d at 803). The defendant thus argued that he could not help but assault the officer—not that he did not intentionally do so. *See Kimes*, 246 F.3d at 803.

In contrast, Mr. Vivanco-Reyes vigorously disputes the government's claim that he intentionally, knowingly, and forcibly drove into the federal officers' cars. When Mr. Vivanco-Reyes saw a black SUV driving directly at him with other cars following, he panicked and tried to get away, but he could not access his ability to rationalize and stop or think through the potential consequences of his panicked flight. The cognitive resources needed to drive effectively were severely compromised. In short, he did not intentionally and knowingly strike the officers' cars; he could not form that intent under those circumstances. Dr. Cervantes-Manzo's testimony is critical to understanding how Mr. Vivanco-Reyes may have acted recklessly to get away, but he did not intentionally drive into the cars.

### 2.    Dr. Cervantes-Manzo's Proposed Testimony Is Not Unreliable

The government claims Dr. Cervantes-Manzo's proposed testimony is "cursory" and speculative because she did not personally evaluate Mr. Vivanco-Reyes. Dkt. 20 at 12–13. But the government omits the fact that medical records are among the documents Dr. Cervantes-Manzo reviewed. *See* Dkt. 20 at 13. Those records show that Andrew Gill, a Licensed Independent Clinical Social Worker[2] and Mental Health

---

[2] To obtain a license to be a Licensed Independent Clinical Social Worker, applicants must have a master's level or doctorate level social work degree from a program accredited by the Council on Social Work Education; complete a minimum of 3,000 hours of post-graduate, supervised experience; successfully complete the Advanced Generalist exam offered by the Association of Social Work Boards; and submit personal data and other information to the Washington Department of Health. Wash. Dep't of Health, *Social Worker and Social Worker Associate: Licensing Requirements*

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Professional, personally evaluated Mr. Vivanco-Reyes. Mr. Gill diagnosed

Mr. Vivanco-Reyes with PTSD after conducting a full assessment and administering

the Global Appraisal of Individual Needs (GAINS), the Generalized Anxiety Disorder-

7 (GAD-7), Patient Health Questionnaire-9 (PHQ-9), which are all tools used to screen

a patient for anxiety and depression. Dr. Cervantes-Manzo also reviewed Mr. Vivanco-

Reyes's medical records, which show ongoing treatment for anxiety and depression,

which co-occur with PTSD.[3]

"An expert may base an opinion on facts or data in the case that the expert has

been made aware of or personally observed. If experts in the particular field would

reasonably rely on those kinds of facts or data in forming an opinion on the subject,

they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.

Psychologists regularly rely (as Dr. Cervantes-Manzo will explain) on the diagnoses of

other mental-health and medical professionals, and the government has offered no

reason to believe Dr. Cervantes-Manzo should not have done so.

In addition, Dr. Cervantes-Manzo reviewed Mr. Vivanco-Reyes's counseling

records in which his mental health provider documented some of the traumatic

experiences he discussed during therapy sessions. She also reviewed letters from

Mr. Vivanco-Reyes's fiancée and pastors, who have known him for years and are aware

of the traumatic experiences he endured as a child. These records have made her aware

of his adverse childhood experiences. She has also reviewed all videos and photos of

the June 6th, incident, which show a high-stress, traumatic event. All of these are facts

she can rely on to render an opinion. *See, e.g., United States v. Baird*, 414 F.2d 700,

---

(last accessed Oct. 8, 2025), https://doh.wa.gov/licenses-permits-and-
certificates/professions-new-renew-or-update/social-worker-and-social-worker-
associate/licensing-requirements [https://perma.cc/6QM7-4DU5].

[3] All of these records were produced to the government prior to the deadline to file
motions in limine.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

703–04 (2d Cir. 1969) ("[T]hey were admitted under the exception to the hearsay rule that it was not for the truth of what the doctors said the appellant said or what Mr. David Baird told the doctors but as a description of the material on which the doctors based their opinions.").

Dr. Cervantes-Manzo will explain to the jury what his PTSD diagnosis means and how PTSD and adverse childhood experience impact cognitive functioning. Although jurors may be familiar with these terms, Dr. Cervantes-Manzo will explain the relationship between trauma and cognitive functioning—topics beyond a layperson's ordinary understanding. At trial, the government will be free to argue that there is insufficient evidence that Mr. Vivanco-Reyes's executive functioning was compromised on June 6th, but these criticisms are about the weight the jury should assign Dr. Cervantes-Manzo's opinions and testimony, not their admissibility.

Undersigned counsel has made every effort to keep this trial on schedule and provide the government with as much notice as possible about the intent to offer expert testimony, the possibility the report would be amended, or that a continuance might be required to allow Dr. Cervantes-Manzo to evaluate Mr. Vivanco-Reyes personally. I have also proposed that Dr. Cervantes-Manzo could observe Mr. Vivanco-Reyes testify, which the government opposes. Rather than exclude Dr. Cervantes-Manzo's testimony because she has been unable to evaluate Mr. Vivanco-Reyes personally, the Court should continue the case.[4]

### 3.    Dr. Cervantes-Manzo's Testimony Will Not Confuse the Jury.

The government claims that the jury will be confused by Dr. Cervantes-Manzo's testimony and will be misled to believe the crime is a specific-intent crime. This, too, is not a basis to exclude her testimony. This Court will instruct the jury about the elements of the crime and explain the law. And "[a] jury is presumed to follow its instructions."

---

[4] A motion to continue outlining the good cause will be filed separately.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 11

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

*Weeks v. Angelone*, 528 U.S. 225, 234 (2000). There is no reason to believe Dr. Cervantes-Manzo's testimony about how PTSD and adverse childhood experiences impact a person's cognitive functioning would cause the jury to believe they need to find that Mr. Vivanco-Reyes acted with a specific intent.

## II.    CONCLUSION

The Court should deny the government's motions in limine and (1) permit evidence and argument about the potential penalties and consequences Mr. Vivanco-Reyes will face if the jury finds specific facts; (2) exclude or limit evidence about the May 22, 2025, attempted arrest of Mr. Vivanco-Reyes; and (3) permit Dr. Cervantes-Manzo's testimony.

DATED this 8th day of October 2025.

Respectfully submitted,

s/ *Colleen P. Fitzharris*
Assistant Federal Public Defender
Attorney for Victor Vivanco-Reyes

I certify this response contains 3,495 words in compliance with the Local Criminal Rules.

VICTOR VIVANCO-REYES'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE
(*United States v. Vivanco-Reyes*, No. CR25-131-JNW) - 12

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**