The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR25-131-JNW |
| Plaintiff, | |
| v. | UNITED STATES' TRIAL BRIEF |
| VICTOR VIVANCO-REYES, | |
| Defendant. | |

## I. INTRODUCTION

Defendant Victor Vivanco-Reyes is charged by Indictment with Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a) and (b) (Counts 1-4). Trial is scheduled for October 27, 2025.

The Government anticipates calling eight witnesses, all of whom are current law enforcement agents or officers. The Government estimates that its case-in-chief will last two trial days.

//
//
//

United States' Trial Brief - 1
United States v. Victor Vivanco-Reyes, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. BACKGROUND

### A. Factual Summary

The Government expects that the evidence will prove the facts summarized below.

<u>The Defendant's Prior Flight from Law Enforcement</u>[1]

On May 22, 2025, Homeland Security Investigations ("HSI") agents conducted surveillance to attempt to locate an Infiniti G37 vehicle that was registered to Vivanco-Reyes and execute a civil administrative warrant for his arrest for immigration violations. That day, two agents in separate, unmarked SUVs observed the Infiniti G37 in front of them in a residential area and attempted a traffic stop. The two agents—both of whom were wearing outer body armor carriers identifying them as law enforcement—activated their emergency lights and sirens. The driver of the Infiniti G37 did not immediately stop and continued on before eventually stopping in front of a residential driveway. Both agents positively identified Vivanco-Reyes as the driver of the Infiniti G37 before he fled from the scene in his vehicle, driving away dangerously and at a high rate of speed. The agents reactivated their sirens and attempted pursuit, observing Vivanco-Reyes narrowly miss a crossing pedestrian and passing vehicles, including a school bus. The agents terminated their pursuit due to the risk to public safety.

<u>The Charged Assaults</u>

Following Vivanco-Reyes's flight from law enforcement, agents continued to investigate him and learned that he worked for a landscaping company that had a job site in Camano Island. On June 6, 2025, law enforcement established surveillance around the job site to locate Vivanco-Reyes and execute the immigration warrant. Air surveillance showed two individuals entering a truck with attached trailer and departing southbound from the job site. The driver of this truck was later identified as Vivanco-Reyes.

---

[1] The facts surrounding this attempted traffic stop/arrest are the subject of a motion *in limine* pending before this Court. Dkt. 20.

United States' Trial Brief - 2
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Multiple unmarked law enforcement vehicles drove northbound to intercept the truck and trailer, including vehicles driven by: (1) Victim 1, with Victim 2 as the front seat passenger; (2) an Immigration and Customs Enforcement ("ICE") officer; and (3) Victim 3, with Victim 4 as the front seat passenger. Victim 1, Victim 2, and Victim 3 are HSI agents, and Victim 4 is a Customs and Border Protection ("CBP") agent. The agents and officer wore outer body armor carriers identifying them as law enforcement.

Based on the prior incident, the agents and officer anticipated that Vivanco-Reyes might attempt to flee again. They were also familiar with his criminal history, including multiple prior convictions for violent offenses.

As Victim 1's vehicle approached the truck and trailer, he activated his emergency lights and pulled into the southbound lane, directly in front of the truck's path. The ICE officer (in a separate vehicle) also activated his emergency lights and drove close to Victim 1's vehicle to block the northbound lane. Witnesses will testify that Vivanco-Reyes initially appeared to slow the truck and Victim 2 partially exited the vehicle around this time. Vivanco-Reyes then quickly accelerated and drove left, towards the corner of Victim 1's vehicle. Victim 2 jumped back inside the vehicle when he saw Vivanco-Reyes about to hit Victim 1's vehicle. The truck and then the attached trailer struck the front passenger side of Victim 1's vehicle, causing Victim 2's open door to slam onto his right shoulder, which was caught in the doorway. Following the impact, Victim 1 attempted to drive in-between the truck and trailer to stop the truck, but was unsuccessful. Vivanco-Reyes was traveling at such a high rate of speed that the collision of the trailer into Victim 1's vehicle caused the trailer to fly up into the air. The truck and trailer almost struck the ICE officer as he was attempting to exit his vehicle, but the officer's vehicle was not impacted.

After Vivanco-Reyes struck Victim 1's vehicle, Victim 3 drove his vehicle into the roadway to block the truck's exit. Victim 4 began exiting the vehicle driven by Victim 3, holding onto the inside handle of the open door. Vivanco-Reyes then drove his

United States' Trial Brief - 3
United States v. Victor Vivanco-Reyes, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

truck and trailer directly into the front of Victim 3's vehicle, and the impact caused Victim 4 to lose his balance and feel a sharp pain in his leg area. Vivanco-Reyes struck Victim 3's vehicle with such force and caused such significant damage that the vehicle was rendered inoperable.

Vivanco-Reyes then crashed into a telephone pole. He fled from the truck on foot and was eventually arrested. As Vivanco-Reyes was being apprehended, Victim 3 and Victim 4 heard him state, "I fucked up, I fucked up." Vivanco-Reyes's driver's license and other cards in his name were inside of a wallet found on his person. The passenger of the truck remained inside the vehicle throughout this incident and was identified and then released.

Two of the victims reported injuries following the June 6, 2025 assaults. Specifically: Victim 2 felt pain in his right rib cage area and right shoulder, as well as numbness traveling down his arm into his fingers; Victim 4 felt pain in his leg and hip area. All of the victims went to the hospital to be medically assessed that day.

### B. Procedural History

On June 6, 2025, Vivanco-Reyes was charged by complaint with two counts of Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a) & (b). Dkt. 1. He stipulated to detention. Dkt. 10. On June 18, 2025, the grand jury returned an indictment charging four counts of the same offense. Dkt. 12.[2]

### III. ELEMENTS OF THE OFFENSES

Counts 1 to 4 charge Vivanco-Reyes with assaults of four federal officers—Victim 1, Victim 2, Victim 3, and Victim 4, respectively—using a deadly or dangerous weapon. Regarding Counts 2 and 4, the Government further alleges that those assaults inflicted bodily injury. The elements of the offenses charged, as applied to each individual victim, are:

---

[2] The complaint alleged assaults against the victims named as Victim 2 and Victim 4 in the subsequent indictment.

United States' Trial Brief - 4
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*First*, the defendant forcibly assaulted a federal officer or employee;

*Second*, the defendant did so while the federal officer or employee was engaged in, or on account of, his official duties; and

*Third*, the defendant used a deadly or dangerous weapon (and/or, as to Counts 2 and 4 only, inflicted bodily injury).

Ninth Circuit Model Criminal Jury Instruction 8.2.

At trial, the Government will prove that Vivanco-Reyes committed the charged assaults by intentionally driving a truck with attached trailer into two government vehicles. The evidence will include testimony from law enforcement witnesses, aerial surveillance footage, video taken by a witness, and photos from the scene of the incident.

## IV.    ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

### A.    Law Relevant to the Offense Elements

Under the first element, a "forcible assault" may be shown by one of three ways: "when one person [1] intentionally strikes another, or [2] willfully attempts to inflict injury on another, or [3] intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm." *Id.* Under the last scenario, the victim's 'reasonable apprehension of immediate bodily harm' is assessed from the subjective vantagepoint of a reasonable person in the victim's shoes (i.e., not from the perspective of a reasonable person "who is aware of all the relevant circumstances"). *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1121 (9th Cir. 2012).

Moreover, to satisfy the first element, the Government is not required to prove any specific intent because Section 111(b) is a general intent crime. *See United States v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989).[3] "[A] general intent crime requires only that the act

---

[3] *See also United States v. Melhuish*, 6 F.4th 380, 394-95, 396 & n.7 (2d Cir. 2021) (holding Section 111 is a general intent crime, and collecting cases from the Fourth, Sixth, Seventh, Eighth, and Eleventh Circuits holding the same).

United States' Trial Brief - 5
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was volitional (as opposed to accidental), and the defendant's state of mind is not otherwise relevant." *United States v. Lamott*, 831 F.3d 1153, 1156 (9th Cir. 2016) (citing *Jim*, 865 F.2d at 212-13); *see also United States v. Melhuish*, 6 F.4th 380, 394 (2d Cir. 2021) (citation and internal quotation marks omitted) ("For a general intent crime, the Government ordinarily must prove that a defendant had at least an intention to make the bodily movement which constitutes the act which the crime requires."). As the Supreme Court has explained, "merely the criminal intent to do the acts therein specified" is sufficient; thus, as applied to Section 111 offenses specifically, "[a]ll the statute requires is an intent to assault[.]" *United States v. Feola*, 420 U.S. 671, 684, 686 (1975).

Pursuant to this authority, to demonstrate the first element in this case, the Government need only prove that Vivanco-Reyes acted volitionally on June 6, 2025: that he meant to drive as he did and in a manner that meets at least one of the three options for 'forcible assault.' His state of mind is irrelevant: The defendant need not know that the victim was a federal officer, *id.* at 684, nor must the Government show any "intent to injure" the victim officers, *see United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997). As a result, the jury will not be instructed on any heightened *mens rea* requirements (for instance, the defendant need not have acted 'knowingly' in connection with the charged offenses, *compare* Ninth Circuit Model Criminal Jury Instruction 4.8 (defining "knowingly") *with id.* 8.2 (no specific intent listed in Section 111(b) offense elements)).

For purposes of the second element, an officer is engaged in performing "official duties" when he acts within the scope of his employment as opposed to "engaging in a personal frolic of his own." *See United States v. Ornelas*, 906 F.3d 1138, 1149 (9th Cir. 2018) (describing actions within the scope of employment as "fall[ing] within [the officer's] agency's overall mission"). Here, the victims were undeniably working together as part of their official duties to execute the immigration warrant.

United States' Trial Brief - 6
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The third offense element is met through proof that the defendant either (i) used a deadly or dangerous weapon, or (ii) inflicted bodily injury. Under the first option, a weapon is considered deadly or dangerous "if it is used in a way that is capable of causing death or serious bodily injury." Ninth Circuit Model Criminal Jury Instruction 8.2. The law in this Circuit is clear that "a car, truck, automobile, or vehicle can constitute a dangerous or deadly weapon under 18 U.S.C. § 111(b)" if it is used in this manner. *United States v. Anchrum*, 590 F.3d 795, 801 (9th Cir. 2009) (collecting cases); *cf. United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002) (a vehicle used "simply as a mode of transportation" would not qualify as a deadly weapon).

As to the second option (which is not defined in the model instruction), the Ninth Circuit has found that to "inflict" bodily injury under Section 111(b) is to engage in conduct that "directly cause[s]" that injury. *See Garcia-Camacho*, 122 F.3d at 1269. In the Seventh and Eleventh Circuits, a "bodily injury" is broadly defined as "any injury to the body, no matter how temporary[,] . . . includ[ing] any cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; or impairment of the function of a bodily member, organ, or mental faculty." Eleventh Circuit Criminal Pattern Jury Instruction O1.2 (2025); Seventh Circuit Criminal Pattern Jury Instruction § 111(b) (2023) (similar). The Government proposes using the Eleventh Circuit's straightforward definition at trial because it provides concrete examples for the jury to consider.[4] The testimony at trial will establish that the injuries suffered by Victim 2 and Victim 4 meet this definition.

The victims this case are officers or employees of the federal government and are thus each a covered "person" as specified in Section 111(a) and (b). *See* 18 U.S.C.

---

[4] Other Circuit courts have explained a "bodily injury" with reference to the U.S. Sentencing Guidelines definition, which states that it is "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." *See* U.S.S.G. § 1B1.1, cmt. n.1(B); Fifth Circuit Criminal Pattern Jury Instruction 2.07 (2024) (incorporating Guidelines definition); Tenth Circuit Criminal Pattern Jury Instruction 2.09 (2025) (same). Although not preferred, the Government would not object to using the Guidelines definition instead.

United States' Trial Brief - 7
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

§ 1114 (a qualifying person is "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)").

### B. Defendant's Prior Flight from Law Enforcement

The Government seeks to offer evidence of Vivanco-Reyes's prior flight from law enforcement on May 22, 2025, and incorporates by reference the two theories detailed in its motion *in limine* supporting the admission of that evidence. Dkt. 20 at 5-11.

### C. Defendant's Statements

The Government will offer the oral statements Vivanco-Reyes made to Victim 3 and Victim 4 upon his apprehension. Those statements are admissible as non-hearsay admissions of a party opponent. Fed. R. Evid. 801(d)(2)(A).

To the extent the defense maintains Vivanco-Reyes made other statements at the same time, the defendant may not offer them under this rule because they are not statements of the proponent's "party-opponent." *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant cannot offer his own statement as party admission). Moreover, Federal Rule of Evidence 106, the rule of completeness, is not a means to circumvent the hearsay rules. *See United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), *as amended* (Oct. 21, 1996) (citation and internal quotation marks omitted) ("Rule 106 does not compel admission of otherwise inadmissible hearsay evidence."); *see also* Fed. R. Evid. 106 (advisory notes) (observing that "[t]he mere fact that a statement is probative and contradicts a statement offered by the opponent is not enough to justify completion under Rule 106").

### D. Photographs and Maps

The Government expects to offer photos (including still frames from the aerial surveillance video) from the scene of the June 6, 2025 incident. The Government will also introduce maps of the May 22, 2025 and June 6, 2025 locations. The photos and maps are admissible. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) (evidence

United States' Trial Brief - 8
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that photographs accurately depict scene provides a sufficient foundation for admission under Federal Rule of Evidence 901(a)).

The Government also seeks to preclude the defense's use of USA-48 (a photo documenting the defendant's arrest following the charged assaults in which three law enforcement agents are masked)[5] at trial. The photo was taken well after the charged assaults, and while the agents were standing (i.e., not inside any of the government vehicles damaged). It is thus not relevant to how the agents would have appeared to the defendant when he first encountered them that day. If the Court finds USA-48 to be relevant, it is nonetheless excludable under Federal Rule of Evidence 403 because it is unfairly prejudicial: showing this specific photo to the jury would only serve to inflame them. The four victims will testify regarding the facial coverings that they and others wore, or did not wear, on June 6, 2025, and the defense may cross-examine or impeach them without the use of this photo.

To the extent the Court rules USA-48 is admissible, the Government respectfully requests that the defense be barred from questioning or argument concerning law enforcement's motivation for taking USA-48, which is additionally irrelevant.

### E. Demonstratives

The Government may use demonstrative diagrams during its opening statement, examination of witnesses, and/or closing argument. Those diagrams may include, for example, the positioning of law enforcement vehicles in relation to the defendant's vehicle, as well as the vehicles' subsequent movements, both on May 22, 2025 and June 6, 2025. The Government does not intend to offer these diagrams into evidence. The use of such diagrams is routinely permitted at the Court's discretion. *See, e.g.*, *Lies v. Farrell*

---

[5] The defense filed a copy of this photograph in its motion to permit video testimony. *See* Dkt. 23 at 3. Only two of the individuals depicted are Government witnesses: Victim 4 (at center) and Victim 3 (at right).

United States' Trial Brief - 9
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Lines, Inc.*, 641 F.2d 765, 773 n.9 (9th Cir. 1981) ("The admissibility of demonstrative evidence in particular is largely within the discretion of the trial judge.").

### F.     Defendant's Criminal History

Vivanco-Reyes has several prior criminal convictions, both as a juvenile and as an adult, including violent criminal history. Dkt. 24 at 7-8. The evidence in this case also includes photos of Vivanco-Reyes's tattoos, which show that he was gang-affiliated for at least some period of time. As detailed in the Government's response to the defense's motion *in limine*, the Government does not intend to offer evidence of the defendant's criminal history or gang affiliation in its case-in-chief, or to impeach Vivanco-Reyes within the parameters of Federal Rule of Evidence 609(a)(1)(B), unless the defense opens the door to this topic. Dkt. 27 at 4-8.

Vivanco-Reyes' criminal history—and, relatedly, the additional precautions taken due to his increased threat to law enforcement—would become relevant at trial if, for instance, the defense case calls into question: the validity of the immigration warrant obtained (including by suggesting that Vivanco-Reyes was improperly or unfairly targeted); the identity of the person named in that warrant; the type or volume of law enforcement resources expended to apprehend Vivanco-Reyes (including by suggesting that the show of force on June 6, 2025 was unwarranted or excessive); or law enforcement's tactical decisions on how to effectuate the arrest (including by suggesting that there were other or better ways to have conducted that arrest).[6]

As noted in the above-referenced response (Dkt. 27 at 6), the Government would request to discuss whether defense counsel opened the door to the defendant's criminal history outside of the presence of the jury. If the Court concludes the door has been

---

[6] The Government would additionally object to any defense cross-examination or argument regarding law enforcement's tactical decisions on June 6, 2025 as irrelevant. This trial concerns the charged assaults that unfolded that day; not the myriad possibilities of what law enforcement could have chosen to do instead.

United States' Trial Brief - 10
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

opened, the Government would seek to introduce through one law enforcement witness the necessary information about this topic (as appropriate to the circumstances) to provide context or correct any misimpressions before the jury. For example, if the defense pressed the point that law enforcement should have approached Vivanco-Reyes in another manner,[7] the Government would elicit testimony that additional protective measures were taken because law enforcement was aware prior to executing the immigration warrant that the defendant may be gang-affiliated and had prior criminal history, including for violent offenses. Moreover, the Government would request that the Court issue a limiting instruction to ensure that the jury does not consider any criminal history information for inappropriate purposes, including propensity.

### G.    Jury Instructions: Lesser-Included Offense

It is the Government's understanding that the defense may request a jury instruction for the lesser-included offense of simple assault, a misdemeanor. *See* 18 U.S.C. § 111(a). Such an instruction is warranted where: "1) the elements of the lesser offense are a subset of the elements of the charged offense, and 2) the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit [him] of the greater." *United States v. Rivera-Alonzo*, 584 F.3d 829, 833 (9th Cir. 2009) (citation omitted) (second brackets in original).

The Ninth Circuit has held that simple assault is a subset of the felony provisions of Section 111, so the first part of this test is met. *Id.* at 833-34. The circumstances of Vivanco-Reyes's case, however, fail the second part of the test and thus a lesser-included instruction is inapplicable here. In *Rivera-Alonzo*, a Section 111(b) case, the Ninth Circuit "adhere[d] to the common law understanding of simple assault as assault that does *not* involve physical contact." *Id.* at 834-35 (citation and alterations omitted)

---

[7] *See* Dkt. 26 at 4 & n.1 (noting that "agents did not attempt to approach Vivanco-Reyes before he started driving" on June 6, 2025, and that agents also "did not [immediately] go to the job sites" identified by the defendant's employer and instead "waited three additional days").

United States' Trial Brief - 11
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(emphasis added). As a result, a jury could not rationally convict the defendant of simple assault because the crimes charged necessarily involved physical contact. *See id.* (affirming district court's refusal to give a lesser-included-offense instruction in a Section 111(b) case due to the "undisputed evidence of physical contact"). The defendant's deliberate collisions into vehicles the victims occupied and/or were adjacent to fall outside of the ambit of simple assault; indeed, even much less forceful physical contact such as the defendant's spitting onto a federal officer's face qualifies as felony assault under Section 111. *See United States v. Stoddard*, 407 F. App'x 231, 234 (9th Cir. 2011).

### H.     Penalties and Collateral Consequences

The Government has moved *in limine* to exclude any reference during this trial to potential penalties or collateral consequences of conviction of the crimes alleged, and incorporates by reference the arguments set forth in its motion. Dkt. 20 at 4-5. Vivanco-Reyes and his counsel should be cautioned against presenting evidence or argument on these topics.

### I.     Agreements of the Parties

The parties have agreed that: (i) the Government's case agent and the defense's investigator may remain at counsel table throughout trial, but all other witnesses (with the exception of the defense's expert)[8] will be excluded from the courtroom except during their testimony; and (ii) no evidence, questioning, or argument will be presented concerning Vivanco-Reyes's substance use. Dkt. 20 at 3-4.

At this time, the parties have not reached agreements regarding factual stipulations or the admissibility of exhibits. The Government is working with the defense to reach agreements on: (i) the foundation for the photo and/or video evidence offered to expedite proceedings; and (ii) the start/stop times of the aerial surveillance video, to avoid any

---

[8] The defense has moved to permit their expert to observe the defendant's testimony at trial, which the Government opposes. *See* Dkt. 27 at 8-11.

United States' Trial Brief - 12
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

confusion regarding the sequence of events. The Government will update the Court with any agreements reached at the pretrial conference.

## V.    TRIAL WITNESSES

### A.    Government Witnesses

The Government anticipates calling the following witnesses during its case-in-chief:[9]

1. HSI Special Agent ("SA") Jacob Black
2. HSI SA Jesse Miller (Victim 1)
3. HSI SA Nathan Hickman (Victim 2)
4. HSI SA Gurman Powar (Victim 3)
5. CBP Border Patrol Agent Parminder Singh (Victim 4)
6. ICE Officer Justin Berg
7. CBP Air and Marine Agent Morgan Buitron
8. ICE Officer David Kasko

At this time, the Government will not be presenting any expert testimony.[10]

### B.    Defense Expert Testimony

The defense disclosed its intent to offer expert opinions from Dr. Yurivia Cervantes-Manzo on Vivanco-Reyes's claimed diagnosis of PTSD and its effects on his decision-making abilities under Federal Rule of Criminal Procedure 16(b)(1)(C). The Government has moved to exclude that testimony as irrelevant, unreliable, and misleading in a motion *in limine* pending before this Court. Dkt. 20 at 11-14.

---

[9] The Government reserves the right to substitute witnesses, or to add or omit one or more witnesses. It also may call witnesses in a different order.

[10] To the extent the Court grants the defense's motion for a continuance and permits the defense to supplement its existing expert disclosures, the Government requests an extension of the scheduling deadlines to consider presenting a rebuttal expert. Dkt. 31 at 4-5.

United States' Trial Brief - 13
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

If Dr. Cervantes-Manzo is permitted to testify at trial, the Government would object to any expert testimony containing hearsay, such as testimony regarding information reflected in the defendant's medical records, including prior diagnoses. While Dr. Cervantes-Manzo may reasonably rely on the opinions of other medical professionals in reaching her conclusions, she "must be more than a conduit or transmitter for . . . hearsay[.]" *See United States v. Shih*, 73 F.4th 1077, 1098 (9th Cir. 2023); *see also United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143-44 (4th Cir. 1994) (collecting cases) ("Even though an expert witness may base his opinion on underlying information, it does not follow that the otherwise inadmissible information may come into evidence just because it has been used by the expert in reaching his opinion.").

The Government would further object to the use of Dr. Cervantes-Manzo's testimony as a back door substitute for the defendant's testimony on his alleged childhood experience, as detailed in the defense's motions. *See* Dkt. 23 at 2-3; Dkt. 24 at 11; *see also United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (observing defense attempt to "place [defendant]'s statement . . . before the jury without subjecting [defendant] to cross-examination" is "precisely what the hearsay rule forbids"). Indeed, Dr. Cervantes-Manzo's report does not state that she considered this specific childhood experience or its impacts as part of her assessment, so her testimony on this particular subject should be precluded. *See* Dkt. 22 Exhibit 1 (under seal).

The Government has also opposed the defense's request to permit Dr. Cervantes-Manzo to observe Vivanco-Reyes's testimony at trial. Dkt. 27 at 8-11. To the extent the Court permits the expert's presence, the Government would additionally object to testimony by Dr. Cervantes-Manzo regarding conclusions reached based on her observations, which were not previously disclosed. *Id.*

//

//

United States' Trial Brief - 14
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VI.   POSSIBLE DEFENSES

Vivanco-Reyes has not noticed any defense for which the Federal Rules of Criminal Procedure require notice. As a result, the Government would move to bar any such defense if it were raised at trial.

## VII.   RECIPROCAL DISCOVERY

To date, the Government has provided hundreds of pages of documents and photographs as well as video and audio recordings in discovery. The physical evidence, including the government vehicles damaged, was available for review upon request.

The Government requested reciprocal discovery on June 20, 2025. To date, the Government has only received the defense's expert disclosures, including what the defense has advised are the source materials reviewed by Dr. Yurivia Cervantes-Manzo to form her opinion (such as the defendant's medical records and letters of support). The Government reserves the right to seek to exclude any evidence offered during the course of trial that should have been provided previously under Federal Rule of Criminal Procedure 16.

//
//
//

United States' Trial Brief - 15
United States v. Victor Vivanco-Reyes, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VIII. CONCLUSION

This trial brief has been prepared to acquaint the Court with the factual and legal issues that may arise at trial. The Government is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the Government requests the opportunity to address them through supplemental briefing.

DATED this 13th day of October, 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*s/ Jessica M. Ly*
*s/ Katherine G. Collins*
JESSICA M. LY
KATHERINE G. COLLINS
Special Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-4311
Fax:              (206) 553-0882
E-mail:         Jessica.Ly@usdoj.gov

I hereby certify that this memorandum contains 4,099 words, in compliance with the Local Criminal Rules.

United States' Trial Brief - 16
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970