The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR25-131-JNW |
| Plaintiff, | |
| v. | UNITED STATES' AMENDED TRIAL BRIEF |
| VICTOR VIVANCO-REYES, | |
| Defendant. | |

## I.     INTRODUCTION

Defendant Victor Vivanco-Reyes is charged by Indictment with Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a) and (b) (Counts 1-4).  Trial is scheduled for January 5, 2026.

The Government anticipates calling eight witnesses, all of whom are current law enforcement agents or officers.  The Government estimates that its case-in-chief will last two trial days.

## II.     BACKGROUND

**A.     Factual Summary**

The Government expects that the evidence will prove the facts summarized below.

United States' Amended Trial Brief - 1
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Defendant's Prior Flight from Law Enforcement

On May 22, 2025, Homeland Security Investigations ("HSI") agents conducted surveillance to attempt to locate an Infiniti G37 vehicle that was registered to Vivanco-Reyes and execute a civil administrative warrant for his arrest for immigration violations. That day, two agents in separate, unmarked SUVs observed the Infiniti G37 in front of them in a residential area and attempted a traffic stop. The two agents—both of whom were wearing outer body armor carriers identifying them as law enforcement—activated their emergency lights and sirens. Several vehicles in-between the agents' vehicles and the Infiniti G37 immediately yielded to law enforcement by pulling over to the side of the road. The driver of the Infiniti G37, however, did not immediately stop and instead continued on before eventually stopping in front of a residential driveway. Both agents positively identified Vivanco-Reyes as the driver of the Infiniti G37. After initially stopping, Vivanco-Reyes then fled from the scene in his vehicle, driving away dangerously and at a high rate of speed. The agents reactivated their sirens and attempted pursuit, observing Vivanco-Reyes narrowly miss a crossing pedestrian and passing vehicles, including a school bus. The agents terminated their pursuit due to the risk to public safety.

The Charged Assaults

Following Vivanco-Reyes's flight from law enforcement, agents continued to investigate him and learned that he worked for a landscaping company that had a job site in Camano Island. On June 6, 2025, law enforcement established surveillance around the job site to locate Vivanco-Reyes and execute the immigration warrant. Air surveillance showed two individuals entering a truck with attached trailer and departing southbound from the job site. The driver of this truck was later identified as Vivanco-Reyes.

Multiple unmarked law enforcement vehicles drove northbound to intercept the truck and trailer, including vehicles driven by: (1) Victim 1, with Victim 2 as the front seat passenger; (2) an Immigration and Customs Enforcement ("ICE") officer; and (3)

United States' Amended Trial Brief - 2
United States v. Victor Vivanco-Reyes, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Victim 3, with Victim 4 as the front seat passenger. Victim 1, Victim 2, and Victim 3 are HSI agents, and Victim 4 is a Customs and Border Protection ("CBP") agent. The agents and officer wore outer body armor carriers identifying them as law enforcement.

Based on the prior incident, the agents and officer anticipated that Vivanco-Reyes might attempt to flee again. They were also familiar with his criminal history, including multiple prior convictions for violent offenses.

As Victim 1's vehicle approached the truck and trailer, he activated his emergency lights and pulled into the southbound lane, directly in front of the truck's path. The ICE officer (in a separate vehicle) also activated his emergency lights and drove close to Victim 1's vehicle to block the northbound lane. Witnesses will testify that Vivanco-Reyes initially appeared to slow the truck and Victim 2 partially exited the vehicle around this time. Vivanco-Reyes then quickly accelerated and drove left, towards the corner of Victim 1's vehicle. Victim 2 jumped back inside the vehicle when he saw Vivanco-Reyes about to hit Victim 1's vehicle. The truck and then the attached trailer struck the front passenger side of Victim 1's vehicle, causing Victim 2's open door to slam onto his right shoulder, which was caught in the doorway. Following the impact, Victim 1 attempted to drive in-between the truck and trailer to stop the truck, but was unsuccessful. Vivanco-Reyes was traveling at such a high rate of speed that the collision of the trailer into Victim 1's vehicle caused the trailer to fly up into the air. The truck and trailer almost struck the ICE officer as he was attempting to exit his vehicle, but the officer's vehicle was not impacted.

After Vivanco-Reyes struck Victim 1's vehicle, Victim 3 drove his vehicle into the roadway to block the truck's exit. Victim 4 began exiting the vehicle driven by Victim 3, holding onto the inside handle of the open door. Vivanco-Reyes then drove his truck and trailer directly into the front of Victim 3's vehicle, and the impact caused Victim 4 to lose his balance and feel a sharp pain in his leg area. Vivanco-Reyes struck

United States' Amended Trial Brief - 3
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Victim 3's vehicle with such force and caused such significant damage that the vehicle was rendered inoperable.

Vivanco-Reyes then crashed into a telephone pole. He fled from the truck on foot and was eventually arrested. As Vivanco-Reyes was being apprehended, Victim 3 and Victim 4 heard him state, "I fucked up, I fucked up." Vivanco-Reyes's driver's license and other cards in his name were inside of a wallet found on his person. The passenger of the truck, Guadalupe Francisco Barragan, remained inside the vehicle throughout this incident and was identified and then released.

Two of the victims reported injuries following the June 6, 2025 assaults. Specifically: Victim 2 felt pain in his right rib cage area and right shoulder, as well as numbness traveling down his arm into his fingers; Victim 4 felt pain in his leg and hip area. All of the victims went to the hospital to be medically assessed that day.

### B. Procedural History

On June 6, 2025, Vivanco-Reyes was charged by complaint with two counts of Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a) & (b). Dkt. 1. He stipulated to detention. Dkt. 10. On June 18, 2025, the grand jury returned an indictment charging four counts of the same offense. Dkt. 12.[1]

### III. ELEMENTS OF THE OFFENSES

Counts 1 to 4 charge Vivanco-Reyes with assaults of four federal officers—Victim 1, Victim 2, Victim 3, and Victim 4, respectively—using a deadly or dangerous weapon. Regarding Counts 2 and 4, the Government further alleges that those assaults inflicted bodily injury. The elements of the offenses charged, as applied to each individual victim, are:

*First*, the defendant forcibly assaulted a federal officer or employee;

---

[1] The complaint alleged assaults against the victims named as Victim 2 and Victim 4 in the subsequent indictment.

United States' Amended Trial Brief - 4
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Second*, the defendant did so while the federal officer or employee was engaged in, or on account of, his official duties; and

*Third*, the defendant used a deadly or dangerous weapon (and/or, as to Counts 2 and 4 only, inflicted bodily injury).

Ninth Circuit Model Criminal Jury Instruction 8.2.

At trial, the Government will prove that Vivanco-Reyes committed the charged assaults by intentionally driving a truck with attached trailer into two government vehicles. The evidence will include testimony from law enforcement witnesses, aerial surveillance footage, video taken by a witness, and photos from the scene of the incident.

### IV.   ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

#### A.   Law Relevant to the Offense Elements

Under the first element, a "forcible assault" may be shown by one of three ways: "when one person [1] intentionally strikes another, or [2] willfully attempts to inflict injury on another, or [3] intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm." *Id.* Under the last scenario, the victim's 'reasonable apprehension of immediate bodily harm' is assessed from the subjective vantagepoint of a reasonable person in the victim's shoes (i.e., not from the perspective of a reasonable person "who is aware of all the relevant circumstances"). *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1121 (9th Cir. 2012).

Moreover, to satisfy the first element, the Government is not required to prove any specific intent because Section 111(b) is a general intent crime. *See United States v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989).[2]  "[A] general intent crime requires only that the act

---

[2] *See also United States v. Melhuish*, 6 F.4th 380, 394-95, 396 & n.7 (2d Cir. 2021) (holding Section 111 is a general intent crime, and collecting cases from the Fourth, Sixth, Seventh, Eighth, and Eleventh Circuits holding the same).

United States' Amended Trial Brief - 5
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was volitional (as opposed to accidental), and the defendant's state of mind is not otherwise relevant." *United States v. Lamott*, 831 F.3d 1153, 1156 (9th Cir. 2016) (citing *Jim*, 865 F.2d at 212-13); *see also United States v. Melhuish*, 6 F.4th 380, 394 (2d Cir. 2021) (citation and internal quotation marks omitted) ("For a general intent crime, the Government ordinarily must prove that a defendant had at least an intention to make the bodily movement which constitutes the act which the crime requires."). As the Supreme Court has explained, "merely the criminal intent to do the acts therein specified" is sufficient; thus, as applied to Section 111 offenses specifically, "[a]ll the statute requires is an intent to assault[.]" *United States v. Feola*, 420 U.S. 671, 684, 686 (1975).

Pursuant to this authority, to demonstrate the first element in this case, the Government need only prove that Vivanco-Reyes acted volitionally on June 6, 2025: that he meant to drive as he did and in a manner that meets at least one of the three options for 'forcible assault.' His state of mind is irrelevant: The defendant need not know that the victim was a federal officer, *id.* at 684, nor must the Government show any "intent to injure" the victim officers, *see United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997). As a result, the jury should not be instructed on any heightened *mens rea* standard. For instance, the defendant need not have acted 'knowingly' in connection with the charged offenses, and whether he may have acted 'recklessly' is immaterial and would not negate the intentionality of his actions.[3] *Compare* Ninth Circuit Model Criminal Jury Instruction 4.8 (defining "knowingly") *with id.* 8.2 (no specific intent listed in Section 111(b) offense elements)).

For purposes of the second element, an officer is engaged in performing "official duties" when he acts within the scope of his employment as opposed to "engaging in a personal frolic of his own." *See United States v. Ornelas*, 906 F.3d 1138, 1149 (9th Cir. 2018) (describing actions within the scope of employment as "fall[ing] within [the

---

[3] *See* Dkt. 66 at 4-7 (Government motion *in limine* to exclude reference, evidence, and argument relating to "recklessness").

United States' Amended Trial Brief - 6
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

officer's] agency's overall mission"). Here, the victims were undeniably working together as part of their official duties to execute the immigration warrant.

The third offense element is met through proof that the defendant either (i) used a deadly or dangerous weapon, or (ii) inflicted bodily injury. Under the first option, a weapon is considered deadly or dangerous "if it is used in a way that is capable of causing death or serious bodily injury." Ninth Circuit Model Criminal Jury Instruction 8.2. The law in this Circuit is clear that "a car, truck, automobile, or vehicle can constitute a dangerous or deadly weapon under 18 U.S.C. § 111(b)" if it is used in this manner. *United States v. Anchrum*, 590 F.3d 795, 801 (9th Cir. 2009) (collecting cases); *cf. United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002) (a vehicle used "simply as a mode of transportation" would not qualify as a deadly weapon).

As to the second option (which is not defined in the model instruction), the Ninth Circuit has found that to "inflict" bodily injury under Section 111(b) is to engage in conduct that "directly cause[s]" that injury. *See Garcia-Camacho*, 122 F.3d at 1269. In the Seventh and Eleventh Circuits, a "bodily injury" is broadly defined as "any injury to the body, no matter how temporary[,] . . . includ[ing] any cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; or impairment of the function of a bodily member, organ, or mental faculty." Eleventh Circuit Criminal Pattern Jury Instruction O1.2 (2025); Seventh Circuit Criminal Pattern Jury Instruction § 111(b) (2023) (similar). The Government proposes using the Eleventh Circuit's straightforward definition at trial because it provides concrete examples for the jury to consider.[4] The testimony at trial will establish that the injuries suffered by Victim 2 and Victim 4 meet this definition.

---

[4] Other Circuit courts have explained a "bodily injury" with reference to the U.S. Sentencing Guidelines definition, which states that it is "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." *See* U.S.S.G. § 1B1.1, cmt. n.1(B); Fifth Circuit Criminal Pattern Jury Instruction 2.07 (2024) (incorporating Guidelines definition); Tenth Circuit Criminal Pattern Jury Instruction 2.09 (2025) (same).

United States' Amended Trial Brief - 7
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The victims this case are officers or employees of the federal government and are thus each a covered "person" as specified in Section 111(a) and (b). *See* 18 U.S.C. § 1114 (a qualifying person is "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)").

### B. Defendant's Prior Flight from Law Enforcement

The Court granted the Government's motion *in limine* to admit evidence of Vivanco-Reyes's prior flight from law enforcement on May 22, 2025. Dkt. 69 at 4, 11. The Government thus intends to offer brief testimony through one law enforcement witness concerning the facts and circumstances of that prior flight.

### C. Defendant's Statements

The Government will offer the oral statements Vivanco-Reyes made to Victim 3 and Victim 4 upon his apprehension ("I fucked up, I fucked up"). Those statements are admissible as non-hearsay admissions of a party opponent. Fed. R. Evid. 801(d)(2)(A).

To the extent the defense maintains Vivanco-Reyes made other statements at the same time, the defendant may not offer them under this rule because they are not statements of the proponent's "party-opponent." *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant cannot offer his own statement as party admission). Moreover, Federal Rule of Evidence 106, the rule of completeness, is not a means to circumvent the hearsay rules. *See United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), *as amended* (Oct. 21, 1996) (citation and internal quotation marks omitted) ("Rule 106 does not compel admission of otherwise inadmissible hearsay evidence."); *see also* Fed. R. Evid. 106 (advisory notes) (observing that "[t]he mere fact that a statement is probative and contradicts a statement offered by the opponent is not enough to justify completion under Rule 106").

//

//

United States' Amended Trial Brief - 8
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. Photographs and Maps

The Government expects to offer photos (including still frames from the aerial surveillance video) from the scene of the June 6, 2025 incident. The Government will also introduce maps of the May 22, 2025 and June 6, 2025 locations. The photos and maps are admissible. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) (evidence that photographs accurately depict scene provides a sufficient foundation for admission under Federal Rule of Evidence 901(a)).

The Government has also moved *in limine* to preclude the defense's use of photos documenting the defendant's arrest following the charged assaults (including USA-48[5]), and incorporates by reference its prior arguments to exclude that evidence. *See* Dkt. 66 at 2-3; *see also* Dkt. 35 at 9. To the extent the Court rules these photos are admissible, the Government respectfully requests that the defense be barred from questioning or argument concerning law enforcement's motivation for taking them, which is additionally irrelevant.

### E. Demonstratives

The Government may use demonstrative diagrams during its opening statement, examination of witnesses, and/or closing argument. Those diagrams may include, for example, the positioning of law enforcement vehicles in relation to the defendant's vehicle, as well as the vehicles' subsequent movements, both on May 22, 2025 and June 6, 2025. The use of such diagrams is routinely permitted at the Court's discretion. *See, e.g.*, *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773 n.9 (9th Cir. 1981) ("The admissibility of demonstrative evidence in particular is largely within the discretion of the trial judge.").

### F. Defendant's Criminal History

Vivanco-Reyes has several prior criminal convictions, both as a juvenile and as an adult, including violent criminal history. Dkt. 24 at 7-8. The evidence in this case also

---

[5] Only two of the individuals depicted in USA-48 are Government witnesses: Victim 4 (at center) and Victim 3 (at right).

United States' Amended Trial Brief - 9
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

includes photos of Vivanco-Reyes's tattoos, which show that he was gang-affiliated for at least some period of time. Consistent with the Court's Order granting the defense's motion *in limine* to exclude evidence on this topic, the Government does not intend to offer evidence of the defendant's criminal history or gang affiliation in its case-in-chief, or to impeach Vivanco-Reyes within the parameters of Federal Rule of Evidence 609(a)(1)(B), unless the defense opens the door to this topic. *See* Dkt. 69 at 10; Dkt. 27 at 4-8.

Vivanco-Reyes' criminal history—and, relatedly, the additional precautions taken due to his increased threat to law enforcement—would become relevant at trial if, for instance, the defense case calls into question: the validity of the immigration warrant obtained (including by suggesting that Vivanco-Reyes was improperly or unfairly targeted); the identity of the person named in that warrant; the type or volume of law enforcement resources expended to apprehend Vivanco-Reyes (including by suggesting that the show of force on June 6, 2025 was unwarranted or excessive); or law enforcement's tactical decisions on how to effectuate the arrest (including by suggesting that there were other or better ways to have conducted that arrest).[6]

In accordance with the above-referenced Order (Dkt. 69 at 10), the Government will request a sidebar to discuss whether defense counsel opened the door to the defendant's criminal history outside of the presence of the jury. If the Court concludes the door has been opened, the Government would seek to introduce through one law enforcement witness the necessary information about this topic (as appropriate to the circumstances) to provide context or correct any misimpressions before the jury. For example, if the defense pressed the point that law enforcement should have approached

---

[6] The Government would additionally object to any defense cross-examination or argument regarding law enforcement's tactical decisions on June 6, 2025 as irrelevant. This trial concerns the charged assaults that unfolded that day; not the myriad possibilities of what law enforcement could have chosen to do instead.

Vivanco-Reyes in another manner,[7] the Government would elicit testimony that additional protective measures were taken because law enforcement was aware prior to executing the immigration warrant that the defendant may be gang-affiliated and had prior criminal history, including for violent offenses. Moreover, the Government would request that the Court issue a limiting instruction to ensure that the jury does not consider any criminal history information for inappropriate purposes, including propensity.

### G. Guadalupe Francisco Barragan's Criminal History

The defense listed Mr. Barragan, the passenger of the truck Vivanco-Reyes drove on June 6, 2025, as a potential witness in its case. If Mr. Barragan testifies, the Government has moved *in limine* to impeach Mr. Barragan through evidence of his prior felony conviction on November 6, 2020 for Assault-3. The conviction meets the requirements under Federal Rule of Evidence 609(a)(1)(A) and is important for the jury to consider as it assesses Mr. Barragan's credibility.

### H. Records of Regularly-Conducted Activity and Rule 902(11) Certifications

The Government will offer Victim 2 and Victim 4's medical records into evidence as records of regularly-conducted activities of a business. These records are admissible pursuant to Federal Rule of Evidence 803(6), which allows for admission of a record if it is made at or near the time of the events set forth therein, by a person with knowledge, and is kept in the course of regularly conducted activity of a business or other organization, if it is the regular practice of the organization (here, a hospital) to make the record. *See* Fed. R. Evid. 803(6); *see also United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) ("[M]edical records from [victim]'s hospital visit . . . [ar]e records kept in the ordinary course of business, classic exceptions to the hearsay rule").

---

[7] *See* Dkt. 26 at 4 & n.1 (noting that "agents did not attempt to approach Vivanco-Reyes before he started driving" on June 6, 2025, and that agents also "did not [immediately] go to the job sites" identified by the defendant's employer and instead "waited three additional days").

United States' Amended Trial Brief - 11
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Government intends to authenticate these business records by offering Rule 902(11) certifications rather than live testimony. Rule 902(11) provides that a party may authenticate a business record through a signed certification of a records custodian if the proponent of the evidence gives the adverse party adequate notice of its intent to offer the records. *See* Fed. R. Evid. 902(11); *see also* Fed. R. Evid. 803(6), Advisory Committee Notes to the 2000 Amendment ("[T]he foundation requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses."). Thus, a business record is admissible under a 902(11) certificate—without authenticating testimony—unless the opponent to admission "show[s] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(6).

In addition to the hearsay exception under Rule 803(6) detailed above, the medical records are also admissible because any statements by the victims to their respective medical providers, as reflected in these records, satisfy the hearsay exception for statements made for medical diagnosis or treatment under Federal Rule of Evidence 803(4). *See* Fed. R. Evid. 803(4); *see also United States v. Kootswatewa*, 893 F.3d 1127, 1132-33 (9th Cir. 2018) (observing that "[a] statement covered by Rule 803(4) is admissible as substantive evidence, regardless of whether the declarant is available to testify"). Statements by the victims describing, for instance, how an injury occurred and their resulting symptoms fall within this established exception. *See Kootswatewa*, 893 F.3d at 1133 (quoting 30 Wright & Miller, *Federal Practice and Procedure* § 6844 (2017)) ("[S]tatements made by most people in the context of an injury-related visit to a medical professional can be presumed to be made for the purpose of medical treatment.").

The Government has produced the 902(11) certificates to the defense and has informed the defense of its intent to admit these records on the basis of those

United States' Amended Trial Brief - 12
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

certifications. The defense has confirmed it has no objections to the authenticity of these records but is reserving its ability to make hearsay objections.

### I. Jury Instructions: Lesser-Included Offense

It is the Government's understanding that the defense may request a jury instruction for the lesser-included offense of simple assault, a misdemeanor. *See* 18 U.S.C. § 111(a). Such an instruction is warranted where: "1) the elements of the lesser offense are a subset of the elements of the charged offense, and 2) the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit [him] of the greater." *United States v. Rivera-Alonzo*, 584 F.3d 829, 833 (9th Cir. 2009) (citation omitted) (second brackets in original).

The Ninth Circuit has held that simple assault is a subset of the felony provisions of Section 111, so the first part of this test is met. *Id.* at 833-34. The circumstances of Vivanco-Reyes's case, however, fail the second part of the test and thus a lesser-included instruction is inapplicable here. In *Rivera-Alonzo*, a Section 111(b) case, the Ninth Circuit "adhere[d] to the common law understanding of simple assault as assault that does *not* involve physical contact." *Id.* at 834-35 (citation and alterations omitted) (emphasis added). As a result, a jury could not rationally convict the defendant of simple assault because the crimes charged necessarily involved physical contact. *See id.* (affirming district court's refusal to give a lesser-included-offense instruction in a Section 111(b) case due to the "undisputed evidence of physical contact"). The defendant's deliberate collisions into vehicles the victims occupied and/or were adjacent to fall outside of the ambit of simple assault; indeed, even much less forceful physical contact such as the defendant's spitting onto a federal officer's face qualifies as felony assault under Section 111. *See United States v. Stoddard*, 407 F. App'x 231, 234 (9th Cir. 2011). Moreover, the jury could not find Vivanco-Reyes guilty of a misdemeanor offense in this case because the defendant used a deadly or dangerous weapon (a truck with attached trailer) to commit the assaults as alleged. *See* 18 U.S.C. § 111(b).

United States' Amended Trial Brief - 13
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### J. Penalties and Collateral Consequences

The Court granted the Government's motion *in limine* to exclude any reference during this trial to potential penalties or collateral consequences following conviction of the crimes alleged. Dkt. 69 at 3-4. Vivanco-Reyes and his counsel are thus not permitted to present evidence or argument on these topics.

### K. Agreements of the Parties

The Court has granted the parties' agreed motions to: (i) permit the Government's case agent and the defense's investigator to remain at counsel table throughout trial, but all other witnesses will be excluded from the courtroom except during their testimony; and (ii) exclude evidence, questioning, or argument concerning Vivanco-Reyes's substance use. Dkt. 69 at 3, 10.

At this time, the parties have not reached agreements regarding factual stipulations or the admissibility of exhibits. The Government is working with the defense to reach potential agreements on pre-admission of exhibits as well as the start/stop times of the video evidence, in order to expedite proceedings and avoid any confusion regarding the sequence of events. The Government will update the Court with any agreements reached at the pretrial conference.

## V. TRIAL WITNESSES

### A. Government Witnesses

The Government anticipates calling the following witnesses during its case-in-chief:[8]

1. HSI Special Agent ("SA") Jacob Black
2. HSI SA Jesse Miller (Victim 1)
3. HSI SA Nathan Hickman (Victim 2)

---

[8] The Government reserves the right to substitute witnesses, or to add or omit one or more witnesses. It also may call witnesses in a different order.

United States' Amended Trial Brief - 14
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    4.      HSI SA Gurman Powar (Victim 3)

    5.      CBP Border Patrol Agent Parminder Singh (Victim 4)

    6.      ICE Officer Justin Berg

    7.      CBP Air and Marine Agent Morgan Buitron

    8.      ICE Officer David Kasko

At this time, the Government does not intend to offer any expert testimony.[9]

### B. Defense Expert Testimony

The Government filed a motion *in limine* to exclude testimony from defense expert Dr. Yurivia Cervantes-Manzo on Vivanco-Reyes's claimed diagnosis of PTSD and its effects on his decision-making abilities because it would be irrelevant, unreliable, and misleading. The Court granted this motion, agreeing that "diminished capacity is not a defense to the charged offenses here." Dkt. 69 at 7 (citations and internal quotation marks omitted). The defense's motion *in limine* to admit similar expert testimony from Andrew Gill, which the Government opposes, remains pending before the Court. *See* Dkt. 68 at 2-7.

## VI. POSSIBLE DEFENSES

Vivanco-Reyes has not noticed any defense for which the Federal Rules of Criminal Procedure require notice. As a result, the Government would move to bar any such defense if it were raised at trial.

## VII. RECIPROCAL DISCOVERY

To date, the Government has provided thousands of pages of documents and photographs as well as video and audio recordings in discovery. The physical evidence

---

[9] The Government noticed expert witness Claudia A'Zar, a Spanish translator, as a possible ninth witness to the extent the defense disputes the accuracy of Ms. A'Zar's Spanish language translations and/or her transcription of an audio call. The Government does not intend to offer any of Ms. A'Zar's Spanish translations into evidence and reserves its ability to call Ms. A'Zar as a witness if needed at trial.

United States' Amended Trial Brief - 15
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was available for review upon request and the defense reviewed the government vehicles damaged in person.

The Government requested reciprocal discovery on June 20, 2025. To date, the Government has received limited defense discovery, almost all of which pertains to the defense's expert disclosures for Dr. Cervantes-Manzo, who the Court has excluded as a witness. The Government reserves the right to seek to exclude any evidence offered during the course of trial that should have been provided previously under Federal Rule of Criminal Procedure 16.

//

//

//

United States' Amended Trial Brief - 16
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VIII. CONCLUSION

This trial brief has been prepared to acquaint the Court with the factual and legal issues that may arise at trial. The Government is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the Government requests the opportunity to address them through supplemental briefing.

DATED this 23rd day of December, 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*s/ Jessica M. Ly*
*s/ Katherine G. Collins*
JESSICA M. LY
Special Assistant United States Attorney
KATHERINE G. COLLINS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-4311
Fax:         (206) 553-0882
E-mail:      Jessica.Ly@usdoj.gov

United States' Amended Trial Brief - 17
*United States v. Victor Vivanco-Reyes*, CR25-131-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970